The Attorney General is in receipt of your request for an official opinion wherein you ask the following question: "Should federal payments made under the provisions of Public Law 94-565 (90 Stat. 2662), 31 U.S.C.A. 1601 — 31 U.S.C.A. 1607, be distributed to school districts and other county functions in the same proportion that the comparable ad valorem taxes would have been distributed?" In 1976, Congress enacted a financial assistance program for units of local government which experienced a loss of tax revenues caused by the existence or expansion of federal land holdings under certain specified federal land acquisition programs. Pub.L. 94-565, 31 U.S.C. § 1601-1607. The assistance provided in Pub.L. 94-565 is primarily for lands taken out of the local tax base for creation or expansion of National Parks, National Forest Wilderness Areas, water resource development projects and several other specifically enumerated federal programs requiring federal land ownership. 31 U.S.C.A. 1606. Payments are made on an acreage/population formula. 31 U.S.C.A. 1602. The payments are not restricted as to use. 31 U.S.C.A. 1601. The federal law defines the units of local government entitled to receive assistance as "a unit of general government as determined by the Secretary of the Interior." 31 U.S.C.A. 1606(c). The Secretary of the Interior has promulgated rules to implement Pub.L.94-565. Vol. 42, Fed. Regstr., No. 189, Sept. 29, 1977. Therein, "unit of general government" is defined (42 Fed. Regstr., p. 51581, 1881.0-5) in the following terms: "Ordinarily, a unit of general government will be a county. However, where a smaller unit of government is the principal provider of governmental services affecting the use of public lands within a state, the smaller unit, even though within a larger unit of government, will be considered a general unit of government and will receive payments under the act. "The term 'unit of general government' excludes single purpose or special purpose units of local government such as school districts or water districts." (Emphasis added) In Oklahoma, the direct recipients of Pub.L. 94-565 funds are counties. It is clear, however, that in creating the assistance program, Congress intended that the funds received by the counties would be distributed to all other local governmental units even though they might not be entitled to direct payments from the federal government. The statute expressly provides in 1603(a) that: "The counties, under guidelines established by the Secretary, shall distribute the payments on a proportional basis to those units of local government and affected school districts which have incurred losses of real property taxes due to the acquisition of lands or interests therein for addition to either such system." (Emphasis added) Unfortunately, the "guidelines" specified by 31 U.S.C.A. 1603(a), when promulgated by the Secretary, shed no additional light on what was intended by Congress in requiring a distribution of payments. 42 Fed. Regstr., p. 51582, 1881.1-3. The implementing rule, 1881.1-3(b), merely states that the counties shall distribute "to affected units of local government and affected school districts, in accordance with Section 3 of the Act 31 U.S.C. § 1603, . . . ." It is clear from the language of the federal law that Congress intended some of the payments to go to all units of local government adversely affected by the withdrawal of real property from the local tax base for use by the federal government in conjunction with the specified programs. It is also clear that the federal law for administrative purposes opted to make the payments to the largest unit of general government affected by the land acquisition, which in Oklahoma would be the counties. The practical administrative decision to deal directly with the counties does not imply that all payments to the counties are funds of the counties to be disposed of at their discretion. The common schools of this State are supported in part from the ad valorem property tax. Article X, Section 9
Okla. Const. The acquisition of lands for federal use within the boundaries of a school district would unquestionably have an adverse impact upon the funding of that school district. The obvious intent of Congress was to compensate to some extent for the loss of tax revenues to all local governments, counties, cities and school districts resulting from these types of federal land acquisitions. Unless the counties distribute some part of the funds to affected local school districts, the intent of the congressional plan of assistance is frustrated to some extent. In the absence of specific guidelines from the Secretary of the Interior defining the "proportional basis" upon which funds are to be distributed to other affected units of local government, it is impossible to say with any precision what distribution formula would satisfy the "proportional basis" distribution criteria established in the Act. See 1603(a). It may be assumed, however, that a distribution plan based on the proportionate share a school district or other unit of local government would ordinarily receive from real property ad valorem tax revenues would be a conforming "proportional basis" plan of distribution. It is, therefore, the official opinion of the Attorney General that your question be answered as follows: 1. Federal payments received by a county under the provisions of Pub.L. 94-565, 31 U.S.C. § 1601-1607, must be distributed on a proportional basis to other local units of government, including school districts, which are affected by the acquisition of lands for federal use as contemplated by the Act. 2. Whether a particular formula for the distribution of funds under Pub.L. 94-565 is on a "proportional basis" is a question of fact; however, a formula which distributes federal payments under the Act on the basis of the percentage of real property ad valorem taxes would be a conforming proportional basis distribution system. (John F. Percival)